**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**No. 00-20994**

---

**SANDY G. TOLLETT,**

      **Plaintiff-Appellee-Cross-Appellant,**

      **versus**

**THE CITY OF KEMAH,**

      **Defendant-Appellant-Cross-Appellee,**

**WILLIAM S. HELFAND,**

      **Appellant-Cross-Appellee.**

---

**Appeal from the United States District Court**
**for the Southern District of Texas**

---

March 6, 2002

Before DAVIS, WIENER, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

For this second appeal in this action, the principal issue is whether, on remand from the first appeal, the district judge exceeded our mandate directing him to recalculate sanctions. Following her unsuccessful trial on the merits, and prior to that first appeal, plaintiff Sandy G. Tollett had been awarded sanctions (attorney's fees and all court costs) against not only the defendant, the City of Kemah, Texas, but also two of its employees. The sanctions arose out of a discovery dispute.

Tollett conceded in the first appeal, however, that those sanctions were not supported by proof of reasonable fees and costs. Therefore, our mandate for the first appeal, consistent with the terms of the contested sanctions order, directed the district court to assess *reasonable* fees and costs, pursuant to Federal Rule of Civil Procedure 37 (failure to produce documents and to comply with discovery order). Instead, on remand, pursuant to its inherent power, the district court imposed sanctions and attorney's fees against the City and, instead of its two employees, against its counsel, William S. Helfand. Those remand-actions followed the district judge's stating he was "insulted" and "angry" because the original sanctions had been appealed.

In addition to the challenge by the City and its counsel to the revised sanctions, Sandy G. Tollett contests the denial, on remand, of a new trial.

That denial is **AFFIRMED**; the sanctions and attorney's fees awarded on remand, as well as the findings and conclusions in the post-remand orders, are **VACATED;** and judgment is **RENDERED**, with the original sanctions being recalculated in accordance with our original mandate.

## I.

Most unfortunately, what should have been a simple, expeditious, and inexpensive undertaking on remand has been just the opposite, to say the least. It goes without saying that our

2

mandate from the first opinion stands.  Therefore, it is neither necessary, much less appropriate, to question, or otherwise reconsider, the merits of the underlying discovery dispute or the correctness of either the original sanctions or our subsequent first opinion and corresponding mandate.  But, to unravel the erroneous result on remand, as well as to understand why this remand-chapter was unnecessary, requires revisiting and dissecting, in considerable detail, the events leading up to, and following, our mandate for the first appeal.

### A.

Tollett was a full-time, non-paid city police officer. Becoming pregnant, she left that position; on returning, she was allegedly informed she would have to retrain and would be on probationary status.  As a result, she brought this action in September 1996 against the City, claiming sex discrimination, violative of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*.

Tollett made discovery requests in January 1997.  Simply put, the City's position, as stated in the affidavit of its Secretary, further discussed below, was that it "ha[d] no records to produce of any employee or volunteer who [was], as described [earlier in the affidavit], '*similarly situated*' to Sandy Tollett".  (Emphasis added.)  That May, unsatisfied with the City's responses concerning

police department personnel records, Tollett moved to compel. The motion was granted that June.

That October, claiming the City had failed to comply with the discovery order, Tollett moved, pursuant to Federal Rules of Civil Procedure *11 and 37*, for sanctions ($50,000) and attorney's fees ($7,500). Tollett reasserted that motion during a pre-trial hearing; the court took it under advisement.

During the March 1998 trial, the discovery dispute over the existence of the records became hotly contested when one of Tollett's witnesses, deputy police chief Peter Munoz, acknowledged the existence of some employment records. The district court ordered that any records be produced in court the next day, and announced that, if it was shown there had been any impropriety with respect to them, it was "going to ask the FBI to go over there [to the police department] and turn that office upside down and put everybody in jail that belongs ... there". The records were produced the next day, the last day of testimony; and the court engaged in extensive questioning about them.

A jury found for the City, with judgment entered on 20 March 1998. On 30 March, Tollett moved for a new trial pursuant to Federal Rule of Civil Procedure 59 — *not Rule 60*, as discussed *infra*.

Tollett asserted in the new trial motion: the City had improperly withheld employment records; it and its counsel had lied

4

about the records' existence; and, had they been properly produced, the outcome of the trial would have been different. But, without explanation, the district court denied the new trial motion that May.

Earlier, however, in a 24 March order (four days after entry of judgment and six days before the new trial motion was filed), the district court had granted the sanctions motion. In the sanctions order, it made the following findings and conclusions: the City Secretary "knew that her statements in [her summary judgment] affidavit [concerning the requested records] would mislead the Court"; the Deputy Chief "knew the falsity and deception of the City Secretary's statement. Nevertheless, he testified falsely concerning the whereabouts of the police personnel records"; and "These perversions of the truth are serious and require serious sanctions against the [two] individuals and the City". But, instead of imposing the requested extreme sanctions *and* attorney's fees, and in the light of its knowledge about, and extensive participation in resolving, the discovery dispute, it assessed $5,000 in attorney's fees and "all court costs" against the defendant City, as well as the two non-defendant employees discussed in the sanctions order, City Secretary Kathy Pierce and Deputy Chief Munoz.

The City moved the court to reconsider the award, asserting there had been no proof to support the amount awarded. The motion was denied without explanation.

Both sides appealed. The City did not challenge the imposition of sanctions, only their amount. *Nor did the two city employees contest being included among those liable for the sanctions.* The City maintained, as it had in its motion to reconsider, that Tollett had not submitted any evidence to support her fees request; and stated that the district court had "failed to articulate why it assessed the specific amount of $5,000.00 or what proof existed to support that amount".

In no respect did Tollett appeal the sanctions. Instead, she challenged only the new trial denial.

That denial was affirmed. ***Tollett v. City of Kemah***, No. 98-20547, at 4 (5th Cir. 13 Sept. 1999) (unpublished) (***Tollett-USCA***). Concerning the City's challenge to the sanctions amount, we held: "The City contends, *and Tollett concedes*, that the sanction imposed by the [district] court *is not supported by proof of the incurred fees and expenses*. It is necessary, therefore, to *remand for a redetermination and assessment of reasonable attorney's fees and costs under Rule 37"*. ***Tollett-USCA***, at 5 (emphasis added).

B.

On remand, the district court stated in a 15 October 1999 order: "[T]he Court is required to determine reasonable sanctions

6

for the conduct of the defendants [sic] *and/or counsel* [not named in the original sanctions order] in failing to comply with [the] discovery request ordered by the Court". Approximately two months later, at a 6 December hearing, the following colloquy ensued:

> [COUNSEL FOR THE CITY]: As I'm sure this Court is aware, *the issue here today is solely regarding the issue of the amount of sanctions*.
>
> THE COURT: Well, I don't know that that's all that it's about, because what the Circuit Court did is I believe they said that the record was not sufficient for me to have entered sanctions. They're not saying sanctions should not have been entered. They're saying I need to make a complete record, it seems to me, and then determine whether sanctions should be entered or not. Because based on the way that I did it, the Circuit Court reversed it, I believe. Maybe I read that incorrectly, but I believe they're saying the record is insufficient to support any amount of sanctions, because it seems to me that they could have said, well, there is some evidence to support some of this, not all of this. Let's redetermine what amount, if any.
>                           ....
>     I do not intend to walk away from this, because *I'm insulted. I'm angry by the fact that this case would go up on a simple $5,000 award that was designed to ameliorate Ms. Tollett's problem*.

(Emphasis added). The district judge stated he "had hoped that this would have gone away; ... [he] was disappointed that the appeal was taken [by the City]"; and "it might be that the Court *ought to defy, if necessary, the Fifth Circuit* and say I'm granting a new trial and I'm going to retry this case". (Emphasis added.)

7

The district court ordered an evidentiary hearing to investigate the circumstances of the discovery requests and the personnel records, and advised the City to retain new counsel, opining that a conflict of interest existed between the City and its counsel, William S. Helfand. A 14 January 2000 order: set the hearing; stated who was to testify; prohibited Helfand and another member of his firm from representing the City in the proceeding; and stated the hearing was necessary "to determine whether sanctions should be imposed and, if so, against whom".

On 12 January, two days before the above-referenced order, Tollett had filed an amended sanctions motion, again pursuant to Rules 11 and 37, seeking $150,000 in sanctions and $75,000 in attorney's fees from the City, Helfand, and Helfand's firm. The motion also requested, pursuant to Rules 60(b)(2) and (3), a new trial on the basis of claimed newly discovered evidence and fraud.

Over two days that March, the evidentiary hearing was held to consider the amended sanctions request, but not that for a new trial, the district court concluding the latter had been "adequately addressed ... in the documents and papers". That October, pursuant to its inherent power, the court imposed against the City and Helfand $50,000 in sanctions and $20,000 in attorney's fees.

Although the district court did not expressly deny Tollett's new trial motion in that October 2000 order and an accompanying separate "FINAL JUDGMENT", it stated in the former it was

8

"convinced ... [Tollett] cannot now, nor could she have ever received a fair trial. This is so because the records of the city of Kemah cannot be authenticated, having been purged by city officials". In short, there is no explicit district court ruling on Tollett's Rule 60(b)(2) and (3) new trial motion.

## II.

The City, Helfand, and Tollett appeal. Accordingly, at issue are: whether the sanctions exceeded our mandate; and whether a new trial should have been granted.

## A.

We review for abuse of discretion the imposition of sanctions, whether pursuant to Rules 11 or 37 or the district court's inherent power. *E.g., Toon v. Wackenhut Corr. Corp.*, 250 F.3d 950, 952 (5th Cir. 2001) (sanctions imposed pursuant to court's inherent power reviewed for abuse of discretion); *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001) (same for Rule 11 sanctions); *FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994) (same for Rule 37 sanctions). An abuse of discretion occurs where the "ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence". *Mansour*, 237 F.3d at 548 (internal quotation marks omitted).

## 1.

Helfand and the City contend that the district court's redetermination, on remand, of whether, and against whom, sanctions

9

should be imposed, exceeded our mandate (the law of the case). They maintain the district court was limited to a redetermination of the amount of sanctions, pursuant to Rule 37, to be assessed against the City and, instead of Helfand, against the two city employees.

a.

"Under the law of the case doctrine, an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal". *United States v. Becerra*, 155 F.3d 740, 752 (5th Cir. 1998) (internal quotation marks omitted). This doctrine is "predicated on the premise that there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions or speculate of chances from changes in its members". *Id.* (internal quotation marks omitted).

"A corollary of the law of [the] case doctrine" is the mandate rule, which "provides that a lower court on remand must implement both the *letter and spirit* of the [appellate court's] mandate, and may not disregard the explicit directives of that court". *Id.* at 753 (internal quotation marks omitted; alteration in original; emphasis added). In other words, a district court "is not free to deviate from the appellate court's mandate". *Id.* (internal quotation marks omitted). And, in implementing the mandate, the district court should consult the reviewing court's opinion "to

10

ascertain what was intended by [the] mandate". ***In re Sanford Fork & Tool Co.***, 160 U.S. 247, 256 (1895).

As a result, the district court "is without power to do anything which is contrary to either the letter or spirit of the mandate *construed in the light of the opinion of [the] court deciding the case*". ***Amer. Trucking Ass'ns, Inc. v. ICC***, 669 F.2d 957, 960 (5th Cir. 1982) (internal quotation marks omitted; alteration in original; emphasis added), *cert. denied*, 460 U.S. 1022 (1983). Again, it must "implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces". ***United States v. Kikumura***, 947 F.2d 72, 76 (3d Cir. 1991) (internal quotation marks omitted).

In imposing the original sanctions, the district court did not state under what authority it was acting. As noted, they had been requested pursuant to Rules 11 and 37. And, the sanctions order contains findings related to both Rules. As discussed *supra*, it also includes findings concerning the affidavit by one sanctioned City employee and the trial testimony by the other. Those two individuals' being sanctioned, in addition to the City, does not fall under either Rule. But, as noted, they did not contest the sanctions on the first appeal.

As discussed *infra*, because the original sanctions' genesis was a discovery dispute, and because they were limited to

11

attorney's fees and court costs, they were more akin to those permitted by Rule 37.  *Compare* FED. R. CIV. P. 11 ("Signing of Pleadings, Motions, and Other Papers; *Representations to Court;* Sanctions" (emphasis added)), especially subparts (c) ("Sanctions") & (d) ("Inapplicability to Discovery"), *with* FED. R. CIV. P. 37 ("Failure to Make Disclosure or Cooperate in Discovery; Sanctions"), especially subparts (a)(4)("Motion For Order Compelling Disclosure or Discovery" — "Expenses and Sanctions") & (b)(2) ("Failure to Comply With Order" — "Sanctions by Court in Which Action is Pending").  Moreover, for the first appeal, the City asserted, *and Tollett did not dispute*, that the sanctions had been imposed pursuant to Rule 37.

Accordingly, for that appeal, we held:

> [T]he district court abused its discretion in imposing sanctions.  Under Rule 37 of the Federal Rules of Civil Procedure, a party may be *liable for reasonable expenses including attorney's fees* caused by the failure to comply with a discovery order.  The language of Rule 37 provides that only the expenses and fees caused by the failure to comply may be assessed [against] the noncomplying party.

> The district court sanctioned the City "the sum of $5,000 in attorneys [sic] fees and all court costs...."  *The City contends, and Tollett concedes, that the sanction imposed by the court is not supported by proof of the incurred fees and expenses.  It is necessary, therefore, to remand for a redetermination and assessment of reasonable attorney's fees and costs under Rule 37.*

12

***Tollett-USCA***, at 4-5 (third alteration in original; internal citations omitted; emphasis added). The separate mandate stated: "the cause is remanded to the District Court for reconsideration and assessment of sanctions".

Tollett maintains the district court "correctly interpreted this court's ruling as setting aside its previous ruling and a requirement that an evidentiary hearing be held to determine liability, if any, for any of the parties subject to sanctions". This reading is totally at odds with our opinion.

Instead, it was clear from our opinion that the district court was not to redetermine the type of sanctions, or whether, and against whom, sanctions should be imposed. The opinion expressly directed the district court *only* to determine the *proper amount to impose* as *Rule 37 sanctions* (reasonable expenses, including attorney's fees). The opinion stated this was necessary because the original award was not supported by any evidence of the attorney's fees and related other expenses incurred by Tollett. There can be no dispute about that.

Tollett contends, however, that exceptions to the law of the case doctrine prevent its application here. The "doctrine ... is not inviolate.... [A] prior decision of this court will be followed without re-examination ... unless (i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable

to such issues, or (iii) the decision was clearly erroneous and would work a manifest injustice".  *Becerra*, 155 F.3d at 752-53 (internal quotation marks omitted).  Tollett relies on the first and third prongs.

Tollett claims the evidence adduced during the post-remand hearing was substantially different from that before the district court prior to the first appeal.  However, the "'law of the case exceptions apply only when substantially different evidence comes out in the course of a *subsequent trial authorized by the mandate'*".  *Id*. at 754 (emphasis added; quoting *Barber v. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, & Helpers, District Lodge #57*, 841 F.2d 1067, 1072 n.5 (11th Cir. 1988)).  Again, our mandate did not authorize proceedings to redetermine who should be sanctioned and for what conduct; it authorized only recalculating the fees and related costs, pursuant to Rule 37.  This exception does not apply.

Tollett also claims a "manifest injustice ... would be worked if Helfand and the City are rewarded for lying to a district court".  The third exception to the law of the case doctrine, however, requires that the decision that constitutes the law of the case — here, our opinion for the first appeal — be "clearly erroneous" and "work a manifest injustice".  Tollett has pointed to no aspect of our opinion in the first appeal that is clearly erroneous.  Likewise, she has not demonstrated how that opinion

14

would work a manifest injustice. Quite telling on this point is Tollett's not appealing the original sanctions award. Again, the opinion simply remanded the matter for recalculation of attorney's fees and costs. This exception is also inapplicable.

The district court exceeded our mandate when it: (1) redetermined whether and against whom sanctions should be imposed; (2) imposed sanctions and attorney's fees pursuant to its inherent power, rather than Rule 37; and (3) assessed sanctions against Helfand, who was not sanctioned in the original order. In short, being without authority to impose those sanctions, the district court abused its discretion. Accordingly, the sanctions and attorney's fees awarded by the judgment entered on 2 October 2000 are vacated.

### b.

It goes without saying that, as a result of the revised sanctions being vacated, the findings of fact and conclusions of law in the district court's post-remand orders, including those concerning Helfand, are vacated as well. *See, e.g.,* **Garcia v. Queen, Ltd.**, 487 F.2d 625, 628-29 (5th Cir. 1973) (vacating findings of fact and conclusions of law where findings of fact were made in violation of Seventh Amendment right to trial by jury). As discussed below, the district court, in its original sanctions, should have addressed any wrongdoing by individuals in addition to the two it then sanctioned.

15

It also goes without saying that a litigant's taking an appeal of right should not be a source of "insult" or "anger" for a district judge. *See* 28 U.S.C. § 1291; ***Digital Equip. Corp. v. Desktop Direct, Inc.***, 511 U.S. 863, 874 (1994) (characterizing an appeal under § 1291 as an "appeal of right"). Soon after trial, in the light of his expressed concerns, observations, and extensive questioning, especially during trial, the district judge decided on a course of action for sanctions. The district judge, as noted, was quite concerned about the discovery dispute and belated document production. As quoted earlier, his sanctions order identified "perversions of the truth [that were] serious and require[d] serious sanctions against the [two City employees discussed in the sanctions order] and the City". Therefore, he confected sanctions "designed", as he later said on remand, "to ameliorate Ms. Tollett's problem".

The new trial motion was filed only six days after the sanctions order. The assertions in that prompt new trial motion, based on the City's production of documents on the last day of testimony, did not cause the district judge to increase, or otherwise change, the sanctions. Moreover, they were far less than those requested by Tollett; she had sought $50,000 in sanctions and $7,500 in attorney's fees. (Whether coincidental or not, on remand, the court awarded $50,000 in sanctions, the amount

16

originally sought, but refused.  Of course, on remand, Tollett had increased the requested sanctions to $150,000, together with $75,000 in attorney's fees.)

It is unknown what the district judge meant when he said, on remand, that the original sanctions had been "designed to ameliorate Ms. Tollett's problem".  In any event, the City was obviously not required to agree with the district judge's view of appropriate sanctions for the discovery dispute.  Nor was it, nevertheless, required to accept the sanctions as a means of putting an end to that dispute.  To appeal was its right.

On remand, on this record, and notwithstanding our mandate, it was far too late in the day for the district judge, "insulted" and "ang[ered]" because the original sanctions had been appealed, to decide upon a new sanctions course of action.  Again, his concerns should have been addressed and resolved by the original sanctions.  Arguably, the district judge's actions equate with judicial vindictiveness.  *See, e.g., **North Carolina v. Pearce***, 395 U.S. 711, 725 (1969) (holding imposition of greater penalty based upon a successful appeal violates due process); ***United States v. Schmeltzer***, 20 F.3d 610, 612 (5th Cir.) (a litigant "has a right to appeal free from fear of judicial retaliation for exercise of that right"), *cert. denied*, 513 U.S. 1041 (1994).

2.

17

The district court's revised sanctions having been vacated, we must determine whether, once again, to remand for a recalculation of the fees and costs to be awarded under the original order, or whether, in the interest of judicial efficiency and economy, to assess them ourselves, pursuant to Rule 37.

In *Sidag Aktiengesellschaft v. Smoked Foods Prods. Co., Inc.*, 960 F.2d 564, 566-67 (5th Cir. 1992), our court held that, where "no useful purpose would be served by further delaying its final disposition, not to mention exposing the parties and this court to yet [another] appeal", we may "determine the quantum of reasonable attorney fees without the necessity of another remand" where sufficient evidence exists in the record for our rendering such an award. Accordingly, in *Sidag*, we awarded attorney's fees based on billing records and affidavits in the record. *Id*. at 567. *See Cobb v. Miller*, 818 F.2d 1227, 1235 (5th Cir. 1987) (reversing award of attorney's fees and rendering judgment in the lodestar amount).

For Rule 37 sanctions, the affidavit of movant's counsel can serve as proof of the amount to be awarded. *See, e.g., Shipes v. Trinity Indus.*, 987 F.2d 311, 323-24 (5th Cir.) (affirming Rule 37 sanctions based upon counsel's affidavit), *cert. denied*, 510 U.S. 991 (1993). Such documents were submitted on remand by Tollett's counsel, during the March 2000 evidentiary hearing. Tollett's

18

counsel's affidavit, with attached billing records, is the record evidence that permits us to render the award.

Along this line, and although we remanded for an assessment of reasonable attorney's fees *and costs* under Rule 37, *see* ***Tollett-USCA***, at 5, the district court instead awarded sanctions and attorney's fees, without mention of related costs. Perhaps, this is because, in Tollett's post-remand, amended sanctions motion, she did not request related costs, nor did her counsel's affidavit and attached billing records document them. In any event, because those costs are not provided in the record, we will award only attorney's fees.

As is well established, we primarily use "the 'lodestar' method to calculate attorney's fees. [For this award, no adjustment to the calculated lodestar amount is in order.] A lodestar is calculated by multiplying the number of hours reasonably expended by *an appropriate hourly rate in the community for such work*". ***Heidtman v. County of El Paso***, 171 F.3d 1038, 1043 (5th Cir. 1999) (internal citation omitted; emphasis added). Accordingly, based on Tollett's counsel's affidavit and the attached billing records, we must determine both the reasonable amount of time expended and the corresponding reasonable hourly rate.

a.

19

For the reasonable time, in her original October 1997 sanctions motion, Tollett requested $7,500 in attorney's fees, asserting this amount was "reasonable and necessary in *preparation of the interrogatories, request for production*, motion to compel and motion for sanctions". (Emphasis added.) Under Rule 37, if a motion to compel is granted, the district court "shall ... require the party ... whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees". FED. R. CIV. P. 37(a)(4)(A). Likewise, for failure to comply with a discovery order, the district court "shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, *caused by the failure*". FED. R. CIV. P. 37(b)(2) (emphasis added).

Pursuant to Rule 37(a)(4), Tollett may recover fees incurred for the motion to compel. Similarly, pursuant to Rule 37(b)(2), Tollett's fee request included those incurred for the original sanctions motion. But, as emphasized above, that request also sought recovery for fees incurred in formulating the underlying discovery requests.

Again, under Rule 37, a party and its counsel "can only be held responsible for the reasonable expenses [including attorney's fees] caused by their failure to comply with discovery". *Chapman*

20

*& Cole & CCP, Ltd. v. Itel Container Int'l B.V.*, 865 F.2d 676, 687 (5th Cir.), *cert. denied*, 493 U.S. 872 (1989); *see **Batson v. Neal Spelce Assocs., Inc.***, 765 F.2d 511, 516 (5th Cir. 1985) (the "plain language of Rule 37 ... provides that only those expenses, including fees, caused by the failure to comply may be assessed against the noncomplying party"). Obviously, the fees incurred for the underlying discovery requests were not caused by any failure to comply. Discovery dispute or no, those fees would have been incurred.

Accordingly, under Rule 37, Tollett may recover her attorney's fees for the motions to compel and seeking the original sanctions. According to the billing records attached to Tollett's counsel's affidavit, counsel spent 12 hours preparing the motion to compel. But, there is no entry pertaining to preparation of the sanctions motion. In addition, there is no entry regarding such work in the billing records attached to Tollett's counsel's amended affidavit. (On remand, the amended affidavit was filed after the March 2000 evidentiary hearing and, in addition to the billing records submitted with the original affidavit, included the billing records pertaining to Tollett's counsel's preparation for and appearance at that hearing.)

In sum, Tollett offered evidence that her counsel expended 12 hours for the motion to compel, but offered none regarding the

21

original sanctions motion.  Therefore, the reasonable expended time is 12 hours.

b.

As for a reasonable hourly rate, and as emphasized *supra*, the "relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits".  *Scham v. District Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998).  Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there.  *E.g., Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993) (party seeking fees submitted "affidavits from other attorneys in the community showing the prevailing market rates in the community").  Tollett's counsel did not offer such affidavits and, instead, as discussed *infra*, relies upon his own assertion in his affidavit that his is a reasonable rate.

In his affidavit, Tollett's counsel:  states "his normal[] hourly rate ranges from $250.00 an hour to $500.00 an hour"; and asserts that the hourly rate stated in the billing records, $300, is reasonable.  The City requests that we make a fees assessment "based on the Plaintiff's attorney fee affidavit ... and render judgment for the Plaintiff in that amount"; in no way does the City contest the reasonableness of the requested rate.

In addition, the City did not challenge the requested rate in district court.  In fact, on remand, in opposition to the sanctions

22

motion, the City essentially conceded the reasonableness of the hourly rate; it requested only that the district court

> carefully review [the] fee affidavit and impose an award that reflects *only* the expenses and fees caused by the City's purported failure to comply with the ... discovery order. Even giving [Tollett's attorney] credit for having a skill commensurate with a $300 per hour fee, this amount should not exceed $5,000.

(Emphasis in original.)

We question that $300 is a reasonable hourly rate. But, only because the City has not contested it, we hold that, based on Tollett's counsel's affidavit, the reasonable hourly rate is $300. *See, e.g.*, **Baulch v. Johns**, 70 F.3d 813, 818 n.8 (5th Cir. 1995) (approving requested hourly rate where such rate ($250-$330 per hour) was not questioned by the opposing party or subjected to adversarial testing, but declining to opine "on whether the rate claimed would be reasonable in other cases in the Dallas area").

As a result, for the Rule 37 reasonable expenses, we award attorney's fees in the amount of $3,600: 12 hours multiplied by a $300 hourly rate. The City and the two City employees designated in the district court's 24 March 1998 sanctions order shall be jointly and severally liable for this amount.

B.

Tollett contests the denial, on remand, of her new trial motion, which she predicated on Rules 60(b)(2) and (3).[*] "Granting or denying a motion under Rule 60(b) is within the discretion of the district court, and we review that decision only for an abuse of discretion". *In re Grimland, Inc.*, 243 F.3d 228, 233 (5th Cir. 2001). The district court did not abuse its discretion in not granting the motion.

1.

A new trial would have been in excess of our mandate to only recalculate the Rule 37 attorney's fees. Along this line, in the first appeal, we rejected Tollett's claim that the judgment should have been set aside under Rule 60(b) because she had not raised that issue in district court.

2.

Assuming *arguendo* such grant would not have exceeded our mandate, a *motion* — as at issue here — predicated upon *Rules*

---

[*]Although the district court, as noted, did not explicitly deny that motion, the entry of its "FINAL JUDGMENT" was an implicit denial of any outstanding motions: in this instance, that for a new trial. *E.g., United States v. Depew*, 210 F.3d 1061, 1065 (9th Cir. 2000) (where judgment of conviction entered, court of appeals treated district court's failure to rule on a motion for employment of an expert witness as a denial of the motion); *Plumeau v. Sch. Dist. #40 County of Yamhill*, 130 F.3d 432, 439 & n.5 (9th Cir. 1997) (after entry of summary judgment, court of appeals held magistrate judge's "failure to rule on a motion is appealable" and, despite such failure to rule, considered whether magistrate judge properly denied the motion). *Despite the district court's failure to rule, neither side subsequently requested that it do so*.

24

*60(b)(1)-(3)* must be filed "not more than one year after the judgment ... was entered". Judgment was entered on 20 March 1998; the motion was not filed until 12 January 2000. Accordingly, it was untimely.

### III.

This appeal underscores why the mandate rule exists and, even more so, why it must be followed. Had it been, the cost, waste, damage, and other harm occasioned by the remand proceedings and this necessary second appeal would have been avoided. Absent exceptions not here present, the mandate must be followed — *in letter and in spirit*.

For the foregoing reasons, the new trial denial is **AFFIRMED**; the sanctions and attorney's fees awarded by the final judgment entered on 2 October 2000, together with the findings and conclusions in the orders on remand, are **VACATED**; and, based upon our recalculation of the sanctions originally awarded Sandy G. Tollett, judgment is **RENDERED** against the City, Kathy Pierce, and Peter Munoz, jointly and severally, in the amount of $3,600.

*AFFIRMED in PART; VACATED in PART; and RENDERED*